IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

LAMEER GRAVES,                           :
                                         :
        Plaintiff                        :
                                         :         CIVIL NO. 1:CV-14-1266
    vs.                                  :
                                         :           (Judge Caldwell)
OFFICER RIVERA, *et al.*,                :
                                         :
        Defendants                       :

*M E M O R A N D U M*

I.    *Introduction*

        Lameer Graves, formerly an inmate confined at the Lebanon County

Correctional Facility (LCCF), in Lebanon, Pennsylvania, filed this civil rights action pursuant

to 42 U.S.C. § 1983.[1]  Named as Defendants are the following LCCF employees: Warden

Robert Karnes; Corrections Officer (CO) Rivera; CO Crawl; CO Mease; CO Muniz; CO

Shannamon and CO Vandose.  Graves alleges Defendants used excessive force against

him during a February 20, 2014, incident.[2]

        Presently before the court for consideration is Defendants' motion for

summary judgment.  (Doc. 16).  For the reasons that follow, the motion will be deemed

unopposed and granted.

_____

        [1] Since April 2015, all mail sent to Graves at his last known address, the LCCF, has been
returned as undeliverable with a notation that he was released from the facility.  (Docs. 21 and 25).

        [2] In his Complaint, Graves alleges the event occurred on February 21, 2014.  (Doc. 1,
Compl.)  Defendants have produced undisputed facts that confirm the event in question occurred
on February 20, 2014.  *See* Doc. 17, Defs.' Statement of Undisputed Material Facts (DSMF), ¶¶ 1-
2.

II.     *Standard of Review*

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The court must determine "whether the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show that there is no genuine issue of material fact and whether the moving party is therefore entitled to judgment as a matter of law."  *MacFarlan v. Ivy Hill SNF, LLC*, 675 F.3d 266, 271 (3d Cir. 2012)(citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986)).  In reviewing a motion for summary judgment, the court must view all facts "in the light most favorable to the non-moving party" and "all reasonable inferences [should be drawn] in that party's favor."  *Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.*, 470 F.3d 535, 538 (3d Cir. 2006).

III.    *Statement of Undisputed Facts*

Along with their motion for summary judgment and brief, Defendants filed a Statement of Undisputed Material Facts (DSMF) and supporting evidentiary materials. (Docs. 17 and 20, 22-3).  Because Graves has failed to file a Statement of Facts in response to Defendants' submission, the facts set forth in Defendants' statement will be admitted pursuant to M.D. Pa. Local Rule 56.1.  The undisputed facts are as follows.

Graves was incarcerated at the LCCF on February 19, 2014.  (Doc. 17, ECF p. 10, Misconduct Report).  On that date, the facility was in a lockdown status.  At approximately 4:30 p.m. while CO Krall was attempting to open Graves' cell part way to

-2-

prevent inmates from coming out but allow him to deliver foodtrays, Graves prevented the cell gate from closing.  (*Id.*)  Graves refused multiple orders to let go of the gate.  (*Id.*)  Officers then forced the gate shut.  (*Id.*)

On February 20, 2014, members of the Lebanon County Correctional Emergency Response Team (CERT) were dispatched to relocate Graves to another cell due to his actions the previous day.  (*Id.*, DSMF ¶ 3).  LCCF staff members involved were: Gettle, Martin, Vandusen, Ludwig, Rivera, Muniz, Mease, Cpl. Hocker and CO Barshinger. The following staff members were witnesses to the cell extraction: CO Krall, Nurse Beard, Captain Ott and Cpl. Waltz.  (Doc. 17, ECF p. 10).  CO Shanaman was not a member of the CERT team that reported to Graves' cell to perform the cell extraction.  (DSMF ¶ 6).

Graves refused the officers' orders to be restrained.  (Doc. 17, ECF p. 10). Graves responded "this is bullshit, I'm not going."  (*Id.*)  Captain Ott then ordered the CERT team to extract Graves from his cell and relocate him to a Restricted Housing Unit (RHU) cell.  (*Id.*; DSMF ¶ 5).  As CERT members approached Graves' cell, he retreated to the back to avoid officers' attempts to shackle and remove him.  (DSMF ¶ 7).  An order was given to CO Ludwig to spray Graves with a chemical agent.  A one-second burst of Oleoresin Capsicum (OC) was dispersed into the cell in an attempt to gain Graves' compliance.  (Doc. 17, ECF p. 10, DSMF ¶ 7).

Graves again refused staff's orders to "cuff up."  (Doc. 17, ECF p. 10). Graves picked up a towel to cover his face to mitigate the effects of the OC spray.  (DSMF ¶ 8).  When the CERT team entered Graves' cell, he began to push and physically resist

officers' attempt to shackle him and remove him from the cell.  (DSMC ¶ 9).  Officer Ludwig dispensed a second burst of OC spray to Graves' facial area.  (Doc. 17, ECF p. 10).  At this time officers were able to use joint manipulation to place Graves on the floor.  (*Id.*)  He then became compliant to being restrained with handcuffs and shackles.  (DSMF ¶ 10).

Graves was immediately escorted to the detail closet for decontamination. (Doc. 17, ECF p. 10).  Nurse Beard examined Graves and determined he sustained no injuries.  (*Id.*; DMSF ¶ 11).  He was medically cleared to be taken to his new housing unit. (Doc. 17, ECF p. 10).  Graves was relocated to his new housing assignment without further issue.  (*Id.*)

On February 24, 2014, Graves received a Disciplinary Board Hearing for the events of February 19 and 20, 2014.  (Doc. 17, ECF p. 11).  Graves pled guilty to the charges of refusing direct orders, restricting the cell gate, resisting staff and disrupting prison operations.  (*Id.*)  Based on Graves' admission of guilt, the Disciplinary Board found Graves guilty of the misconduct charges and sanctioned him to sixty days in disciplinary confinement.  (*Id.*)

The LCCF has a Use of Force policy which outlines its use of force continuum.  (Doc. 17, ECF pp. 12 - 15).  All members of the LCCF, including Defendants, are trained in the LCCF's Use of Force Continuum, which adequately trains officers to recognize and employ reasonable force in response to a defiant and/or resistant inmate. (DSMF ¶ 14).  Members of the CERT team were authorized to use the reasonable and proportional force that was employed on Graves on February 20, 2014, as a result of his

insubordinate and physically resistant behavior.  (DSMF ¶ 15).  The force used on Graves

on February 20, 2014, was reasonable, proportional, and necessary to secure the

compliance of a recalcitrant and physically resistant inmate.  (DSMF ¶ 17).

IV.    *Discussion*

The Eighth Amendment protects an inmate from a correctional officer's use of

excessive force.  *Brooks v. Kyler*, 204 F.3d 102, 106 (3d Cir. 2000).  "The core inquiry of an

excessive-force claim is 'whether force was applied in a good-faith effort to maintain or

restore discipline, or maliciously and sadistically to cause harm.'"  *Fennell v. Cambria Cnty.*

*Prison,* 607 F. App'x 145, 148 (3d Cir. 2015) (nonprecedential) (quoting *Wilkins v. Gaddy*,

559 U.S. 34, 37, 130 S.Ct. 1175, 1178, 175 L.Ed.2d 995 (2010)).  The reasonableness of a

particular use of force is often dependent upon factual context and must be "judged from

the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of

hindsight."  *Graham v. Connor*, 490 U.S. 386-87, 109 S.Ct. 1865, 1872, 104 L.Ed.2d 443

(1989).  "[N]ot 'every malevolent touch by a prison guard gives rise to a federal cause of

action.'"  *Wilkins*, *supra*, 559 U.S. at 37, 130 S.Ct. at 1178 (quoting *Hudson v. McMillian*,

503 U.S. 1, 9, 112 S.Ct. 995, 1000, 117 L.Ed.2d 156 (1992)).

"The relevant factors for a court to consider are: (1) the need for the

application of force; (2) the relationship between the need and the amount of force that was

used; (3) the extent of injury inflicted; (4) the extent of the threat to the safety of staff and

inmates, as reasonably perceived by responsible officials on the basis of the facts known to

them; and (5) any efforts made to temper the severity of a forceful response."  *Giles v.*

*Kearney*, 571 F.3d 318, 328 (3d Cir. 2009)(citing *Brooks, supra,* 204 F.3d at 106). Although the extent of injury is relevant, the inmate does not need to sustain serious injury to state an excessive-force claim.  *Wilkins,* 559 U.S. at 36-38, 130 S.Ct. at 1178-1179.

Based on the undisputed facts in the instant case, it cannot be said that the actions taken by the CERT team members rose to the level of a constitutional violation. Graves refused to comply with repeated orders from staff to present himself to be restrained and removed from his cell.  Graves was verbally and physically defiant with staff. He moved to the back of his cell to evade the CERT team.  He then struggled with staff when they entered his cell to extract him after he repeatedly failed to comply with orders to be restrained.  Graves pled guilty to the related misconduct charging him with refusing direct orders, restricting cell gate, resisting staff and disruption of prison operations. Following the event Graves was promptly decontaminated and evaluated by a nurse.  It is undisputed that he incurred no injuries as a result of the use-of-force incident.  Even though OC spray (a chemical weapon) and the officers' use of physical force (joint manipulation) was utilized to place Graves on the floor of his cell, it cannot be argued in light of the undisputed facts that such force was not applied in a good-faith to gain compliance and control over this defiant and combative inmate.  There are no facts in the record to suggest otherwise.

For these reasons, a finding of summary judgment as to the sole claim, that

of excessive force, is warranted in favor of the Defendants.

An appropriate order follows.

/s/ William W. Caldwell
William W. Caldwell
United States District Judge

Date: February 25, 2016